**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 21-81865-CIV-CANNON/Reinhart**

**DAVID RORIE**,

Plaintiff,

v.

**SCHOOL BOARD OF**
**PALM BEACH COUNTY, FLORIDA**,

Defendant.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss the Second Amended Complaint with Prejudice and/or Dismiss/Strike the Second Amended Complaint as a "Sham Pleading" (the "Motion") [ECF No. 31], filed on March 9, 2022. The Court has reviewed the Second Amended Complaint [ECF No. 28], the Motion [ECF No. 31], Plaintiff's Response [ECF No. 33], Defendant's Reply [ECF No. 34], and the full record. For the reasons set forth below, Defendant's Motion [ECF No. 31] is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL & PROCEDURAL BACKGROUND**

This Order assumes familiarity with the factual and procedural background of this action, which is detailed in the Court's Order Granting Defendant's Motion to Dismiss and Granting Final Opportunity to Amend [ECF No. 25].[1] Put simply, Plaintiff alleges that he was discriminated and

[1] The Court takes notice that Plaintiff revised his job title from "Head Janitor" in the First Amended Complaint [ECF No. 10 ¶ 14] to "Lead Custodian" in his Second Amended Complaint [ECF No. 28 ¶ 14]. Defendant argues that Plaintiff dishonestly identified himself as a lead custodian to "plead around [Defendant's] motion to dismiss" [ECF No. 31 p. 2]. Plaintiff responds that this revision was not a falsity but rather a correction that would provide some clarity to the proceedings [ECF No. 33 p. 10]. The Court need not assess this factual issue at this stage and

retaliated against by a Palm Beach County Schools employee trainer based on Plaintiff's disability, religion, and race.

Defendant previously moved to dismiss the First Amended Complaint [ECF No. 17]; the Court granted that request but allowed Plaintiff one final opportunity to cure the identified defects [ECF No. 25]. Accordingly, Plaintiff filed the Second Amended Complaint on February 25, 2022 [ECF No. 28]. As before, Plaintiff brings a total of eleven claims against Defendant, listed below in their entirety:

- Count I: Disability Discrimination in Violation of the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 760.01–760.11;
- Count II: Religious Discrimination in Violation of the FCRA;
- Count III: Race Discrimination in Violation of the FCRA;
- Count IV: Retaliation in Violation of the FCRA;
- Count V: Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2;
- Count VI: Disability Discrimination in Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12103;
- Count VII: Religious Discrimination in Violation of Title VII;
- Count VIII: Retaliation in Violation of Title VII;
- Count IX: Retaliation in Violation of the ADA;
- Count X: Hostile Work Environment in Violation of the FCRA, Title VII, and ADA; and
- Count XI: Retaliatory Hostile Work Environment in Violation of the FCRA, Title VII, and ADA

[ECF No. 28 pp. 9–29].

instead takes Plaintiff's allegations as true. The parties may revisit the issue of Plaintiff's correct job title at the summary judgment stage, following discovery.

Defendant again seeks to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure [ECF No. 31]. This Motion is ripe for adjudication [ECF No. 33 (Plaintiff's Response); ECF No. 34 (Defendant's Reply)].

**LEGAL STANDARD**

Rule 8(a)(2) requires complaints to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**DISCUSSION**

Defendant moves to dismiss each cause of action in Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted [ECF No. 31]. The Court analyzes these claims by addressing the deficiencies noted in the Court's previous Order [ECF No. 25] and assessing whether Plaintiff sufficiently amended his claims to cure those deficiencies.

**A. Counts I and VI: Disability Discrimination Under the FCRA and ADA**

The Court first considers Count I (FCRA) and Count VI (ADA) together, because "actions under the Florida Civil Rights Act are analyzed under the same framework as the ADA." *Chanda*

*v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000). Subchapter I of the ADA prohibits employers from discriminating against their employees because of a disability. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (citing 42 U.S.C. §§ 12111–17). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).

The Court found a total of three deficiencies in Plaintiff's First Amended Complaint as to Counts I and VI and granted Plaintiff leave to amend [ECF No. 25 pp. 4–6]. These deficiencies are as follows: (1) "Plaintiff [did] not adequately plead[] that he has a disability"; (2) "Plaintiff [did] not allege sufficient facts to show that any alleged discrimination was because of his disability"; and (3) "Plaintiff fail[ed] to properly allege 'that [he] was treated less favorably than "similarly situated" individuals outside [his] class' as is required at the prima facie stage" [ECF No. 25 pp. 4–6 (quoting *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc))].

Upon review of Plaintiff's Second Amended Complaint, the Court determines that Plaintiff has sufficiently amended Counts I and VI to plausibly state claims under the FCRA and ADA.

First, Plaintiff's Second Amended Complaint adds that he began to experience anxiety, which "substantially limited . . . various major life activities including sleeping, concentrating, interacting with others, learning, daily care, speaking, and performing manual tasks" [ECF No. 28 p. 8]. Plaintiff's purported anxiety caused a substantial limitation in major life activities, which is sufficient to allege, for pleading purposes, a qualifying disability under the ADA. *See Greenberg v. Bellsouth Telecomm., Inc.*, 498 F.3d 1258, 1264 (explaining that "a plaintiff qualifies as disabled under the ADA if he has '(A) a physical or mental impairment that substantially limits one or more

of the major life activities,'" including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" (quoting 42 U.S.C. § 12102(1)). Thus, Plaintiff has sufficiently alleged that he has a disability under the ADA.

Second, Plaintiff's Second Amended Complaint adds that he was issued a write-up for his performance after he returned from leave due to "high levels of anxiety" [ECF No. 28 p. 8]. Upon his return, Plaintiff contends that he was written up because Castellano did not like "Plaintiff's claims that he was experiencing anxiety which caused him to be disabled" and did not like that Plaintiff took an accommodation to deal with his alleged disability [ECF No. 28 p. 8]. Plaintiff continues by alleging that "Defendant has engaged in discrimination against Plaintiff because of Plaintiff's disability and chronic conditions," subjecting Plaintiff to "animosity based on his disability" [ECF No. 28 pp. 9–10]. At the pleading stage, these additions sufficiently allege that the purported discrimination was because of Plaintiff's disability. Defendant may explore the validity of this allegation further in discovery.

Third, Plaintiff has sufficiently pled a similarly situated comparator with respect to his disability. A comparator does not need to be "nearly identical" as a plaintiff but rather must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224. Generally, "a similarly situated comparator . . . will have engaged in the same basic conduct (or misconduct) as the plaintiff . . . been subject to the same employment policy, guideline, or rule as the plaintiff . . . been under the jurisdiction of the same supervisor . . . and will have share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28. Here, Plaintiff adds in his Second Amended Complaint the following:

> Similarly situated employees outside of Plaintiff's protected classes were not subject to the same discriminatory treatment as Plaintiff. For example, the Lead Custodian for the day shift, Greg Isles, did not have his religious beliefs questioned by Greco, nor was Isles given baseless write-ups and constantly

> accused of not doing his job. Isles held the same position as Plaintiff, but just during the day-shift, whereas Plaintiff worked the night shift. Isles and Plaintiff both had the same job duties and supervisors such as Greco, Castellano, and Wade. Isles was white, Caucasian and not disabled.

[ECF No. 28 p. 9]. Taking Plaintiff's additional comparator allegations as true—including the comparator's position, his employment and disciplinary histories, his relevant conduct, that the comparator worked under the same supervisors as Plaintiff, and that the comparator falls outside of Plaintiff's protected class with respect to his disability—Plaintiff has adequately alleged that the comparator was "similarly situated" at the motion to dismiss stage. *See Douglas v. Cruise Yacht Op Co.*, No. 21-CV-23980, 2022 WL 1719312, at *7 (S.D. Fla. 2022) (denying defendant's motion to dismiss and finding plaintiff's allegations that she was treated less favorably than other co-workers outside her race to be sufficient).

For these reasons, Plaintiff has sufficiently alleged a disability discrimination claim under the FCRA and ADA (Counts I and VI).

### B. Counts II and VII: Religion Discrimination Under the FCRA and Title VII

Counts II and VII are claims of religious discrimination under the FCRA and Title VII respectively. Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The Florida Civil Rights Act of 1992 ("FCRA") prohibits the same conduct, *see* Fla. Stat. §§ 760.01–.11, and the Court looks to applicable Eleventh Circuit case law in applying both statutes. *See Harper v. Blockbuster Entm't. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII."); *Johnson v. Miami-Dade Cnty.*, 948 F.3d

1318, 1325 (11th Cir. 2020) ("[B]ecause the FCRA is based on Title VII, decisions construing Title VII apply to the analysis of FCRA claims.").

To establish a prima facie case of discrimination for disparate treatment under Title VII and the FCRA, Plaintiff must show "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was . . . treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

The Court found a total of two deficiencies in Plaintiff's First Amended Complaint with regard to Counts II and VII and granted Plaintiff leave to amend [ECF No. 25 pp. 6–8]. These deficiencies are as follows: (1) Plaintiff failed to sufficiently plead that his written reprimands constituted actionable adverse actions as a matter of law; and (2) Plaintiff failed to plausibly plead a valid comparator [ECF No. 25 pp. 6–8].

The Court finds that Plaintiff has failed to sufficiently amend his Complaint with respect to Counts II and VII. First, Plaintiff still has not sufficiently pled that he has suffered an adverse employment action. To sufficiently plead an adverse employment action under Title VII and the FCRA, a plaintiff must allege a "*serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). "Tangible employment actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). Negative job performance reviews and changes to work assignments generally do not meet the statutory threshold to constitute an adverse employment action. *See*

*Davis*, 245 F.3d at 1240–42 ("[T]he loss of prestige or self-esteem felt by an employee who receives . . . job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause."); *see also Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (holding that a written reprimand does not constitute an adverse employment action under Title VII if the reprimand does not lead to an adverse tangible effect on plaintiff's employment). However, "[a] reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, Plaintiff adds in his Second Amended Complaint that after he complained about Mr. Greco's alleged discriminatory comments and behavior, he "was written up for baseless reasons such as performance issues. For example, Castellano changed Plaintiff's shift hours three times within a six-month period" [ECF No. 28 p. 4]. All Plaintiff has alleged is that he was issued write-ups based off of his performance and that his shift hours were changed. Plaintiff has not alleged that the written reprimands led to any negative tangible effect on Plaintiff's employment status, such as a reduction in pay. *See Davis*, 245 F.3d at 1240–43. Thus, Plaintiff has not sufficiently pled an adverse employment action under the FCRA and Title VII.

Second, Plaintiff has not sufficiently alleged a valid comparator with respect to his religion. Plaintiff adds in his Second Amended Complaint that the comparator, Mr. Isles, "did not have his religious beliefs questioned by Greco" [ECF No. 28 p. 9], but Plaintiff does not allege what religion, or lack thereof, Mr. Isles follows. This Court, thus, has no way of knowing whether the comparator falls outside of Plaintiff's protected class or whether this comparator is "similarly situated." As such, Plaintiff has not sufficiently alleged a valid comparator with respect to his

religion.

For these reasons, Counts II and VII are dismissed with prejudice as further described below.

**C. Counts III and V: Race Discrimination Under the FCRA and Title VII**

The Court now turns to Plaintiff's race discrimination claims (Counts III and V) under the FCRA and Title VII. As before, "[t]o make out a prima facie case of racial discrimination a plaintiff must show (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford*, 529 F.3d at 970.

The Court found a total of two deficiencies in Plaintiff's First Amended Complaint with regard to Counts III and V and granted Plaintiff leave to amend [ECF No. 25 pp. 8–9]. These deficiencies are as follows: (1) Plaintiff failed show any adverse employment actions caused by racial discrimination and (2) Plaintiff failed to plausibly plead a valid comparator [ECF No. 25 pp. 8–9].

Plaintiff has failed to sufficiently amend his Complaint as to Counts III and V. Although Plaintiff has sufficiently pled a valid comparator with respect to his race, Plaintiff has not pointed to any adverse employment action allegedly caused by racial discrimination other than the written reprimands which, for the reasons already explained, do not constitute an adverse employment action under Title VII and the FCRA as pled. *See Davis*, 245 F.3d at 1240–41. The absence of an adverse employment action is fatal to Plaintiff's race discrimination claims under the FCRA and Title VII and warrants dismissal with prejudice as further described below.

**D. Counts IV, VIII, and IX: Retaliation Under the FCRA, Title VII, and ADA**

Next, the Court considers Plaintiff's retaliation claims (Counts IV, VIII, and IX) under the

FCRA, Title VII, and the ADA.

Title VII prohibits employers from retaliating against employees for opposing unlawful employment discrimination. *See* 42 U.S.C. § 2000e–3(a). The ADA and FCRA also contain anti-retaliation provisions. *See* 42 U.S.C. § 12203(a); Fla. Stat. § 760.10(7). To establish a prima facie case of retaliation, a plaintiff must show that (1) he participated in a statutorily protected activity; (2) he experienced an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *see also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1158 (11th Cir. 2005) (listing the same essential elements for ADA retaliation claims).

The Court found a total of three deficiencies in Plaintiff's First Amended Complaint with regard to Counts IV, VIII, and IX and granted Plaintiff leave to amend [ECF No. 25 pp. 9–10]. These deficiencies are as follows: (1) Plaintiff failed to provide any factual allegations for his retaliation claim based on gender; (2) Plaintiff has failed to allege a causal connection between Plaintiff's complaints to Castellano about Greco's religious comments and the written reprimands; and (3) Plaintiff's retaliation claim failed to sufficiently plead an adverse employment action [ECF No. 25 pp. 9–10].

The Court finds that Plaintiff has failed to sufficiently repled Counts III and V. First, Plaintiff removed the allegations relating to his gender, requiring no further discussion of any gender-based claim of retaliation. Second, Plaintiff has not pled an adverse action under Title VII or the ADA. To show an adverse action under Title VII and the ADA, a plaintiff must show that a "reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006);

*see also Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 26 (11th Cir. 2009) (applying the same standard to a retaliation claim under the ADA). In the context of a retaliation claim under the ADA, "an employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). Here, Plaintiff pleads as follows:

> Immediately upon his return on January 6, 2020, Plaintiff was issued a write up for his performance and placed under investigation. Castellano did not like Plaintiff's claims that he was experiencing anxiety which caused him to be disabled, nor did she like the fact that Plaintiff took an accommodation to deal with his disability and upon Plaintiff returning she set out to take adverse action against him.

[ECF No. 28 pp. 8–9].

As before, these allegations do not qualify as an adverse action under Title VII and the ADA without some further showing that the written reprimand had some tangible, negative effect on Plaintiff's employment—which Plaintiff fails to show. *See Lucas*, 257 F.3d at 1261 ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation under the ADA."); *see also Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015) (stating that "reprimands and poor performance evaluations" are insufficient to qualify as adverse actions under the ADA); *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 73–74 (1st Cir. 2001) (holding that reprimands were not material under Title VII because they did not carry tangible consequences). As such, Plaintiff has not sufficiently alleged a materially adverse employment action under the ADA, FCRA, or Title VII. This is fatal to the retaliation claims. Counts IV, VII, and IX are dismissed with prejudice as further described below.

### E. Count X: Hostile Work Environment Under FCRA, Title VII, and ADA

Count X alleges a claim of hostile work environment claim under the FCRA, Title VII, and the ADA. To establish a prima facie case for hostile work environment under Title VII and the FCRA, a plaintiff must

show the following:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (elements under Title VII); *see also Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220, 1225 (M.D. Fla. 2015) (same elements for FCRA claim). While the Eleventh Circuit has not explicitly recognized hostile work environment claims under the ADA, "several other circuits have concluded that the ADA provides a cognizable claim for a disability-based hostile work environment." *Cooper v. CLP Corp.*, 679 F. App'x 851, 853 n.2 (11th Cir. 2017); *see also Mont-Ros v. City of W. Mia.*, 111 F. Supp. 2d 1338, 1362 (S.D. Fla. 2000) ("Disability-based hostile environment claims are analyzed under the Title VII standards for hostile work environment claims.").

In determining whether the alleged harassment is "sufficiently severe or pervasive" to make out a hostile work environment claim, the Court considers "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)).

Previously, the Court identified two deficiencies in Plaintiff's First Amended Complaint as to Counts X and granted leave to amend [ECF No. 25 pp. 11–13]. These deficiencies were as follows: (1) Plaintiff failed to allege any discriminatory comments based on his disability; and (2) Plaintiff offered only minimal detail about the frequency or severity of the relevant conduct against the backdrop of relevant Eleventh Circuit authority [ECF No. 25 pp. 12–13].

The Court finds that Plaintiff has failed to sufficiently amend Count X. First, Plaintiff's Second Amended Complaint adds that Mr. Greco called Plaintiff a "cream puff" and purposefully touched the inside of a toilet bowl and wiped that same finger on Plaintiff's bare forearm [ECF No. 28 p. 4]. While certainly inappropriate, this allegation does not relate to Plaintiff's alleged disability of anxiety and stress; nor does it relate to Plaintiff's religion or race. For this reason alone, Plaintiff's hostile work environment claim under the ADA warrants dismissal.

Additionally, Plaintiff's Second Amended Complaint adds that Mr. Greco told Plaintiff that Plaintiff needs the "presence of God to be efficient at work" and also said that Plaintiff does not have God in him [ECF No. 28 p. 3]. Although these comments relate to Plaintiff's religion and, again, are inappropriate, Plaintiff still fails to allege conduct that is sufficiently severe or pervasive enough under relevant Eleventh Circuit authority. *See Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 837–38 (11th Cir. 2021); *Guthrie v. Waffle House, Inc.*, F. App'x 803, 805–07 (11th Cir. 2012); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000), *overruled on other grounds by Burlington*, 548 U.S. at 53; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999).

Count X is dismissed with prejudice.

### F. Count XI: Retaliatory Hostile Work Environment Under FCRA, Title VII, and ADA

Finally, the Court turns to Plaintiff's retaliatory hostile work environment claim, Count XI, under the FCRA, Title VII, and the ADA. This is a new claim not previously asserted in Plaintiff's First Amended Complaint.

"Title VII prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec., Dept. of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021); *see also Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) ("[W]e

hold that this circuit recognizes a cause of action for retaliatory hostile work environment."). A plaintiff bringing a Title VII retaliatory hostile work environment claim must establish that the harassment complained of "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The standard for evaluating a retaliatory hostile work environment claim under Title VII therefore is similar to the standard for evaluating retaliation claims under Title VII. First, a plaintiff must establish that he engaged in statutorily protected activity. *Gowski*, 682 F.3d at 1312. Second, the plaintiff must allege harassment or some other form of adverse conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan*, 955 F.3d at 861 (citing *Burlington Northern*, 548 U.S. at 68). Finally, the plaintiff must show a but-for causal link between the protected activity and the adverse action suffered by the plaintiff. *See Babb v. Sec., Dept. of Veterans Affs.*, 992 F.3d 1193, 1205 (11th Cir. 2021).

Upon review of this newly added count, Plaintiff's retaliatory hostile work environment fails to allege harassment that is materially adverse under the standard articulated in *Monaghan* and *Burlington Northern*. Specifically, Plaintiff alleges that, after he complained about Greco's comments to Principal Castellano and Assistant Principal Wade, "it was apparent" that Castellano and Wade "did not like the fact that Plaintiff complained," and so they "began harassing and intimidating Plaintiff" [ECF No. 28 p. 4]. Specifically, such alleged harassment included "comments regarding the school and its cleanliness[,] inferring that Plaintiff was not an effective employee" and written reprimands regarding Plaintiff's performance [ECF No. 28 p. 4]. Moreover, "Castellano changed Plaintiff's shift hours three times in a six-month period" [ECF No. 28 p. 4]. Finally, Plaintiff adds that he "would be blamed for things that were beyond

his control" [ECF No. 28 p. 4].

Even under the lower retaliation standard, Plaintiff still must allege conduct that is materially adverse such that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan*, 955 F.3d at 861 (citing *Burlington Northern*, 548 U.S. at 68). Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not done so. Title VII is not a "general civility code for the American workplace." *Burlington Northern*, 548 U.S. at 68. Although Plaintiff allegedly received harsh and perhaps even unwarranted negative job performance feedback, there is no allegation that Plaintiff suffered any harassing conduct that would have had a material effect on his employment. Thus, for the same reasons already analyzed, *see supra* Part D, the alleged retaliatory harassment would not have dissuaded a reasonable employee from supporting a charge of discrimination. *See Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021) (finding that statements by other employees and plaintiff's manager saying plaintiff would be fired if she did not attend work would not dissuade a reasonable worker from making or supporting a charge of discrimination); *Buckley v. McCarthy*, No. 4:19-CV-49 (CDL), 2021 WL 2403447, at *8 (M.D. Ga. June 11, 2021) (dismissing retaliatory hostile work environment claim, where supervisors may have made inappropriate racially stereotyping comments but neither used profanity towards plaintiff nor verbally or physically threaten her).

Accordingly, because Plaintiff did not allege retaliatory harassing conduct that is materially adverse, Count XI fails to adequately state a claim and dismissal is warranted.

**G. Punitive Damages**

Finally, Defendant moves to strike Plaintiff's punitive damages claim under Title VII, the ADA, and the FCRA, as well as his prayers for prejudgment interest. The ADA and Title VII prohibit the collection of punitive damages against governmental entities. *See* 42 U.S.C.

§ 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ."); *Parsons v. Okaloosa Cnty. Sch. Dist.*, No. 09-cv-254, 2010 WL 1753152, at *3 (N.D. Fla. Mar. 30, 2010) ("[G]overnment entities are exempt from punitive damages under both Title VII and the ADA."). And, under the FCRA, neither punitive damages nor prejudgment interest may be awarded against state subdivisions. Fla. Stat. §§ 760.11(5), 768.28(5); *Maradiaga v. Brevard Cnty. Sch. Bd.*, No. 07-cv-869, 2007 WL 9719456, at *3 (M.D. Fla. Aug. 24, 2007) (striking prayer for punitive damages under FCRA against a school board).

The Court previously struck Plaintiff's punitive damages claim and directed Plaintiff to "omit a prayer for punitive damages" when filing any amended claim [ECF No. 25 p. 13]. The Court's position remains the same and, as such, Plaintiff's punitive damages claim is stricken again.

For these reasons, all Counts in Plaintiff's Second Amended Complaint are dismissed with prejudice except Counts I and VI, which may proceed.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss [ECF No. 31] is **GRANTED IN PART AND DENIED IN PART.**
2. Counts II, III, IV, V, VII, VIII, IX, X, and XI of the Second Amended Complaint [ECF No. 28] are **DISMISSED WITH PREJUDICE.**[2]

[2] As detailed in the Court's first Order, Plaintiff was given one final opportunity to plead his claims. Consistent with that warning, all Counts in Plaintiff's Second Amended Complaint, excluding Counts I and VI, warrant dismissal with prejudice because Plaintiff has failed to cure the deficiencies noted by the Court in its previous Order. *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

3. Counts I and VI may proceed.
4. Defendant shall file its answer to the Second Amended Complaint as narrowed in this Order [ECF No. 28], on or before **September 9, 2022**.
5. The Court's prior order staying discovery [ECF No. 20] is **LIFTED**. The parties shall jointly file an amended Joint Scheduling Report on or before **September 1, 2022**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 19th day of August 2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record