UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-81865-REINHART

DAVID RORIE,

                Plaintiff,

      v.

SCHOOL BOARD OF PALM
BEACH COUNTY, FLORIDA,

               Defendant.

_____/

## OMNIBUS ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF Nos. 102, 131]

Plaintiff David Rorie sues Defendant School Board of Palm Beach County, Florida ("School Board") for disability discrimination in violation of the Florida Civil Rights Act of 1992, Fla. Stat. §760.01 *et seq.*, ("FCRA") and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, ("ADA"). ECF Nos. 28, 40. Mr. Rorie claims he is disabled due to his generalized anxiety disorder. ECF No. 110 at 6.

The School Board moved for judgment as a matter of law on Mr. Rorie's disability discrimination claims ("Summary Judgment Motion"). ECF No. 102. Mr. Rorie filed a response arguing that the Summary Judgment Motion should be denied. ECF No. 110. The School Board filed a reply. ECF No. 122. I have reviewed all the relevant pleadings, including the respective Amended Statements of Material Facts. ECF Nos. 106, 113.

After the Summary Judgment Motion became ripe, Mr. Rorie moved for reconsideration of Judge Cannon's Order granting in part and denying in part Defendant's Motion to Dismiss Second Amended Complaint ("MTD Order") and to strike this case from the trial calendar ("Motion for Reconsideration").[1] ECF No. 131. I have reviewed Mr. Rorie's Motion for Reconsideration and the School Board's response in opposition. ECF No. 135. For the following reasons, the School Board's summary judgment motion is **GRANTED** and the Motion for Reconsideration, which is construed to be a motion for leave to amend the Second Amended Complaint, is **GRANTED**.

## BACKGROUND

After Mr. Rorie's case was removed to federal court, he filed a First Amended Complaint ("FAC"). ECF No. 10. The FAC included eleven causes of action: disability, religion, and race discrimination in violation of the FCRA (Counts I-III), retaliation in violation of the FCRA (Count IV), race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") (Count V), disability discrimination in violation of the ADA (Count VI), religion discrimination in violation of Title VII (Count VII), retaliation in violation of Title VII (Count VIII), retaliation in violation of the ADA (Count IX), hostile work environment in violation of Title VII (Count X), hostile work environment in violation of the ADA (Count XI). *Id.* Judge Cannon granted the School Board's motion to dismiss the FAC, explained the

---

[1] The parties consented the case to me on March 20, 2023. ECF No. 77.

2

deficiencies in each cause of action, and provided Mr. Rorie one final opportunity to file a second amended pleading consistent with her order. ECF No. 25.

On February 25, 2022, Mr. Rorie filed his Second Amended Complaint ("SAC"). ECF No. 28. The SAC included the same causes of action as the FAC for Counts I-IX and asserted a claim for hostile work environment in violation of the FCRA, Title VII, and the ADA (Count X) and retaliatory hostile work environment in violation of the FCRA, Title VII, and the ADA (Count XI). *Id*. On August 22, 2022, Judge Cannon granted in part the School Board's motion to dismiss the SAC and dismissed Counts II, III, IV, V, VII, VIII, IX, X, and XI with prejudice because Mr. Rorie failed to cure the deficiencies noted by the Court in its previous Order. ECF No. 40. Counts I and VI of the SAC, alleging disability discrimination in violation of the FCRA and ADA, were the only two claims to survive the motion. *Id*.

On September 13, 2022, Mr. Rorie filed a motion for clarification asking the Court to clarify, given its order dismissing his retaliation claims with prejudice, whether he may raise additional claims of retaliation resulting from adverse employment actions that occurred after he filed the SAC or if he would be required to file his claims in a separate action. ECF No. 47. Mr. Rorie explained that he was informally advised, in July of 2022, that his employment with the School Board was terminated. *Id*. In late August 2022, after the Court's order dismissing his retaliation claims, he received a formal Letter of Termination. *Id*. Judge Cannon granted Mr. Rorie's request for clarification and stated that Mr. Rorie must exhaust his administrative remedies before bringing the contemplated retaliation claims in court.

3

ECF No. 51. Mr. Rorie's subsequent request to stay the proceedings pending his exhaustion of administrative remedies related to his termination was denied on October 21, 2022. ECF Nos. 53, 67.

## SUMMARY JUDGMENT MOTION

### I. LEGAL PRINCIPLES

A. Summary Judgment Standard

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
>
> …
>
> The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1306–07 (S.D. Fla. 2014) (J. Bloom) (citations omitted). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United*

*States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "would affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citations omitted).

In sum, the School Board must first offer facts that, when viewed in the light most favorable to Mr. Rorie, are sufficient to show that the School Board would be entitled to judgment as a matter of law. If the School Board does so successfully, Mr. Rorie bears the burden of producing additional undisputed evidence showing that the School Board is not entitled to judgment at this stage or that, contrary to the School Board's assertion, disputed issues of material fact remain.

Federal Rule of Civil Procedure 56 and Local Rule 56.1 set forth the procedures for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c) states:

(1) *Supporting Factual Positions.* A party asserting that a fact . . . is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(c). The Court has discretion to disregard a factual assertion or dispute that is not properly supported by admissible evidence. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(c), (d).[2] A factual assertion that is not properly disputed may be deemed admitted "provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c).

B. ADA and FCRA

The ADA prohibits discrimination by an employer against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). "Establishing a *prima facie* case under the ADA requires a plaintiff to show that, at the time of the adverse employment action, [he] had a disability, [he] was a qualified individual, and [he] was subjected to unlawful discrimination because of [his]

---

[2] As the Seventh Circuit aptly pointed out, "Judges are not like pigs, hunting for truffles buried in briefs." *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

disability." *United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016) (citing *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007)). "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims." *Holly*, 492 F.3d at 1255 (citing *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)). Therefore, the ADA and FCRA claims will be considered together.

To survive a motion for summary judgment, a plaintiff must cite evidence that would allow a reasonable jury to find that the defendant discriminated against him because of his disability. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021). The plaintiff "can do this by offering either direct or circumstantial evidence of discrimination." *Id*. Where there is no direct evidence of an employer's intent, the Court often analyzes ADA discrimination claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davidson v. Chspsc LLC*, 861 Fed. Appx. 306, 310-311 (11th Cir. 2021) (first citing *Holly*, 492 F.3d at 1255; then citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328-29 (11th Cir. 2018); and *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)).

The Eleventh Circuit recently clarified how the *McDonnell Douglas* test applies in discrimination cases:

> Step one is for the plaintiff, who establishes what *McDonnell Douglas* calls a "prima facie" case of discrimination when she shows that (1) "she belongs to a protected class," (2) "she was subjected to an adverse employment action," (3) "she was qualified to perform the job in question," and (4) "her employer treated 'similarly situated' employees

7

outside her class more favorably." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The last requirement is met when the plaintiff presents "evidence of a comparator—someone who is similarly situated in all material respects." *Jenkins*, 26 F.4th at 1249 (quotation omitted). The prima facie showing entitles the plaintiff to a rebuttable presumption of intentional discrimination. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The defendant then rebuts that presumption (if it can) by offering evidence of a valid, non-discriminatory justification for the adverse employment action. *Id.* at 714, 103 S.Ct. 1478. Once that justification is offered, the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination. *Id.* at 714–15, 103 S.Ct. 1478; *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. This final question "merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089 (alterations adopted)).

*Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). To establish pretext, a plaintiff must show the employer's proffered reason was false and the real reason was discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

"[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive summary judgment in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff will also survive summary judgment if he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation marks and internal citation omitted). A convincing mosaic may consist of "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and

8

other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systemically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks and ellipsis omitted).

## II. UNDISPUTED FACTS

1.     At all relevant times, Mr. Rorie was employed by the School District as a Custodial Foreperson and Lead Custodian at Spanish River High School ("Spanish River"). Defendant's Amended Statement of Undisputed Material Facts ("DSOF") ¶6.

2.     As Custodial Foreperson, Mr. Rorie was responsible for supervising the custodial staff and maintaining school cleanliness. DSOF ¶7; ECF No. 102-3 at 1, ¶4.

3.     In 2019, Assistant Principal Joshua Wade was assigned the responsibility of custodial and facility issues. DSOF ¶15.

4.     Effective July 1, 2019, Ms. Allison Castellano became Principal of Spanish River. DSOF ¶18.

5.     On October 22, 2019, Mr. Rorie received a Memorandum from Principal Castellano regarding "Policies/Procedures/Job Knowledge, Written/Oral Assignments, Attendance and Poor Performance" ("October 22, 2019, Memorandum"). DSOF ¶30; ECF No. 102-3 at 19-21. Mr. Rorie disputes the reasons the memorandum was issued, and notes that he refused to sign the memorandum, but does not dispute that he received the memorandum. Plaintiff's Amended Statement of Material Facts ("PSOF") ¶30.

6.     On November 1, 2019, Mr. Rorie was diagnosed with generalized anxiety

9

disorder. PSOF ¶9; ECF Nos. 113-3; 113-34.

7.     On December 2, 2019, Mr. Rorie received a Memorandum from Principal Castellano regarding "Policies/Procedures/Job Knowledge, Written/Oral Assignments, Attendance and Poor Performance" ("December 2, 2019, Memorandum"). DSOF ¶31; ECF No. 102-3 at 22-24. Mr. Rorie disputes the reasons the memorandum was issued, and notes that he refused to sign the memorandum, but does not dispute that he received the memorandum. PSOF ¶31.

8.     On December 16, 2019, Principal Castellano issued a Directive for Immediate Action to Mr. Rorie ("December 16, 2019, Directive"). DSOF ¶32; ECF No. 102-3 at 25. Mr. Rorie disputes the reasons the directive was issued, and notes that he refused to sign the directive, but does not dispute that he received the directive. PSOF ¶32.

9.     On December 17, 2019, Mr. Rorie submitted a Leave Request Form to Ms. Lisa Core, Confidential Secretary, for intermittent leave to care for his wife. DSOF ¶45; ECF No. 102-3 at 26-27. Ms. Core forwarded the form to Principal Castellano. DSOF ¶46; ECF No. 102-3 at 1, ¶10. Principal Castellano signed the form on December 18, 2019. DSOF ¶46; ECF No. 102-3 at 26. Ms. Core did not provide Principal Castellano with any medical information attached to Mr. Rorie's Leave Request Form. DSOF ¶47.

10.    On January 6, 2020, Principal Castellano issued a Directive for Immediate Action to Mr. Rorie ("January 6, 2020, Directive"). DSOF ¶33; ECF No. 102-3 at 29. Mr. Rorie disputes the reasons the directive was issued, and notes

10

that he refused to sign the directive, but does not dispute that he received the directive. PSOF ¶33.

11.     On January 6, 2020, Mr. Rorie received a Memorandum from Principal Castellano regarding "Performance Deficiencies" that directed him to meet with the Performance Standards manager and Principal Castellano on one of two proposed dates ("January 6, 2020, Memorandum"). DSOF ¶34; ECF No. 102-3 at 30.[3]

12.     On January 7, 2020, Mr. Rorie received a Memorandum from Assistant Principal Wade regarding "Professional Judgment" ("January 7, 2020, Memorandum"). DSOF ¶35; ECF No. 102-3 at 31-32. Mr. Rorie disputes the reasons the memorandum was issued, and notes that he refused to sign the memorandum, but does not dispute that he received the memorandum. PSOF ¶35.

13.     On January 9, 2020, Mr. Rorie, Principal Castellano, Assistant Principal Wade, Union Representative Ronald LaPorte, and Human Resources Manager Kevin Butanowicz attended a meeting to discuss Mr. Rorie's performance. DSOF ¶36. On the day of the meeting, Mr. Rorie received a Memorandum of Assistance regarding "Job Performance" ("January 9, 2020, Memorandum of Assistance"). DSOF ¶37; ECF No. 102-3 at 33-37. Mr. Rorie disputes the reasons the memorandum was issued, and notes that he refused to sign the memorandum, but does not dispute that he received the memorandum or that he attended the meeting. ¶36.

---

[3] Mr. Rorie states that this fact is disputed but provides no evidence to support his position. PSOF ¶34. Because the School Board supports this fact by properly cited record evidence and no exception under Fed. R. Civ. P. 56 applies, the fact is deemed admitted. *See* S.D. Fla. L.R. 56.1(c).

14. On January 14, 2020, Mr. Rorie received a Notice to Meet, directing him to attend a mandatory meeting on January 16, 2020, with Principal Castellano to discuss a schedule change. DSOF ¶38; ECF No. 102-3 at 40.

15. On August 27, 2020, Mr. Rorie attended a meeting with Assistant Principal Wade "to address policies and procedures surrounding COVID-19 cleaning procedures and paperwork." DSOF ¶39; ECF No. 102-3 at 41-42. He was subsequently provided notes purportedly summarizing the conference ("August 27, 2020, Conference Notes"). *Id.*

16. On October 6, 2020, Mr. Rorie received a Memorandum from Assistant Principal Wade regarding "Policies/Procedures Self-Management, Job Knowledge, Written/Oral Assignments and Insubordination" ("October 6, 2020, Memorandum"). DSOF ¶40; ECF No. 102-3 at 43-45. Mr. Rorie disputes the reasons the memorandum was issued, and notes that he refused to sign the memorandum, but does not dispute that he received the memorandum. PSOF ¶40.

17. On February 3, 2021, Mr. Rorie received a "Verbal Reprimand with Written Notation" for "failure to fulfill the responsibilities of a Custodial Foreperson", "Poor Judgment/modeling unprofessional behavior," and "insubordination" ("Verbal Reprimand with Written Notation"). DSOF ¶41; ECF No. 102-3 at 47-48. Mr. Rorie disputes the reasons the Verbal Reprimand with Written Notation was issued, and notes that he refused to sign the reprimand, but does not dispute that he received the reprimand. PSOF ¶41.

18. On February 14, 2021, Mr. Rorie requested and received a leave of

absence without pay. DSOF ¶48; ECF No. 102-3 at 49. Mr. Rorie was granted extensions of his leave through June 30, 2022. DSOF ¶¶50-52. On June 20, 2022, Mr. Rorie was notified that his request for an extension of his leave for 2022-2023 was denied because he exhausted all of his available leave. DSOF ¶53; ECF No. 102-3 at 55.[4] Principal Castellano approved Mr. Rorie's requests for leaves of absence. ¶57.

## III. PARTIES ARGUMENTS

The School Board argues that it is entitled to summary judgment because Mr. Rorie has failed to present prima facie evidence of disability discrimination. ECF No. 102 at 4-8. Specifically, the School Board argues Mr. Rorie has failed to show that: (1) the decisionmakers had knowledge of his disability, (2) he suffered an adverse employment action,[5] and (3) any adverse employment action was taken *because of* his disability. ECF Nos. 102 at 4-8; 122 at 6-11. Finally, the School Board argues that Mr. Rorie has failed to present record evidence that its non-discriminatory reason for the alleged adverse actions – Mr. Rorie's performance deficiencies – is a pretext for discrimination. ECF Nos. 102 at 7-8; 122 at 8-9.

Mr. Rorie responds that genuine issues of material fact exist as to whether he has presented a prima facie case of disability discrimination and whether the School

---

[4] Mr. Rorie states that this fact is disputed but provides no evidence to support his position. PSOF ¶53. Because the School Board supports this fact by properly cited record evidence and no exception under Fed. R. Civ. P. 56 applies, the fact is deemed admitted. *See* S.D. Fla. L.R. 56.1(c).

[5] The School Board contends that the SAC alleges only two adverse employment actions; Mr. Rorie received criticism and write-ups. ECF No. 102 at 1.

Board's reason for its actions was a pretext for discrimination. ECF No. 110 at 4-13. Mr. Rorie argues that he suffered from the following acts that constitute adverse employment action: termination, increased scrutiny, "write ups," shift changes, and constantly shifting duties and responsibilities. ECF No. 110 at 7-11.

The School Board replies that Mr. Rorie's allegations regarding increased supervision, performance write ups, and changes to work assignments do not amount to adverse employment action. ECF No. 122 at 3. The School Board further replies that Mr. Rorie's alleged termination cannot be considered an adverse employment action because the SAC did not allege termination as an adverse employment action and Mr. Rorie did not exhaust his administrative remedies as to that allegedly discriminatory act. ECF No. 122 at 4.

## IV. DISCUSSION

The Court assumes, without deciding, that Mr. Rorie has satisfied the first two elements of a prima facie case – that he is disabled and is a qualified individual. To satisfy the third element – discrimination because of his disability – Mr. Rorie must show he has suffered an adverse employment action because of his disability. *See Sloan v. Miami Dade Fire Rescue*, No. 18-21517-CIV, 2019 WL 2869067, at *3 (S.D. Fla. July 3, 2019) (J. Scola); *see also Doe v. Dekalb Cnty. School Dist.*, 145 F.3d 1441, 1445, 1451 (11th Cir. 1998) (citation omitted).

To show adversity, "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe*, 145 F.3d at 1449. "Any adversity must be material." *Id.* "An employment action is

considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Martin v. Eli Lilly & Co.*, 702 Fed. Appx. 952, 956 (11th Cir. 2017) (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Martin*, 702 Fed. Appx. at 956 (first quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); then citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Notably, when evaluating whether an action impacted the "terms, conditions, and privileges" of employment within the meaning of the ADA, "courts apply the same precedents used to analyze the adverse actions of Title VII claims." *Hargett v. Fla. Atl. Univ. Bd. of T.*, 219 F. Supp. 3d 1227, 1238-39 (S.D. Fla. 2016) (J. Middlebrooks) (citing *Doe*, 145 F.3d 1447-48). "Those precedents hold that while Title VII 'does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'" *Hargett*, 219 F. Supp. 3d at 1238-39 (citing *Davis*, 245 F.3d at 1239).

Moreover, an employer cannot discriminate against an employee because of his disability unless the decisionmaker for an alleged adverse employment action had knowledge of the disability. *Ferreira-Silva v. AW Pro. & Maint. Serv., Inc.*, No. 21-CV-61442, 2022 WL 2438156, at *5 (S.D. Fla. June 5, 2022) (J. Moore) ("[I]t is well-

established that '[a]n employee cannot be fired because of a disability unless the decisionmaker has actual knowledge of the disability.'") (quoting *Campbell v. Boies, Schiller, Flexner, LLP*, 543 F. Supp. 3d 1334, 1342 (S.D. Fla. 2021) (J. Moore)).

The Court first addresses whether there is a genuine dispute of material fact regarding whether the relevant decisionmakers had knowledge of Mr. Rorie's disability. Then, the Court addresses whether Mr. Rorie has presented sufficient evidence of an adverse employment action.

A. <u>Knowledge of Disability</u>

As an initial matter, the Summary Judgment Motion identifies Principal Castellano as the decisionmaker for the adverse actions alleged in the SAC. ECF No. 102 at 1, 5. However, the evidence submitted in support of the motion reflects that some of the alleged adverse actions, such as a few of Mr. Rorie's write-ups, were issued by Assistant Principal Wade rather than Principal Castellano. Because the School Board focuses on Principal Castellano as the decisionmaker, the majority of its arguments only address Principal Castellano's knowledge of Mr. Rorie's disability.

In support of its claim that Mr. Rorie failed to show that a decisionmaker had knowledge of his disability, the School Board cites the following testimony from Mr. Rorie's deposition:

Q: My question is: Who at Spanish River High School did you tell you had a disability?

A. Tell that I have a disability?

Q. Yes, sir.

16

A. I don't know if nobody know I have a disability.

Q. Okay.

A. Yeah, I don't.

ECF No. 102 at 5 (citing ECF No. 102-2 at 8, page 28, lines 15-22). The School Board also submitted an affidavit by Principal Castellano in which she swears that she was not aware that Mr. Rorie had a disability. ECF Nos. 102 at 5; 102-3 at 2.

In response, Mr. Rorie cites his deposition testimony stating that Principal Castellano was aware of his generalized anxiety disorder and that he was seeing a therapist, because he sent paperwork to her through one or more email. ECF No. 110 at 6 (citing ECF No. 102-2 at 18, page 68, lines 13-25). In addition, he claims that the School Board admitted in response to a Request for Admission ("RFA") that it had notice of his disability. ECF No. 110 at 6. The RFA at issue said, "Admit or deny that the Defendant was aware of the Plaintiff's disability." ECF No. 113-1 at 7. The School Board's response said, "Admitted." ECF No. 113-2 at 4. Next, Mr. Rorie cites his 2021 request for leave, based on his generalized anxiety disorder, and his 2022 request for "ADA accommodations," as evidence that the School Board was on notice of his disability. ECF No. 110 at 6 (citing ECF Nos. 113-5, 113-33). Finally, Mr. Rorie submitted a declaration stating that he told Principal Castellano and Assistant Principal Wade that he was undergoing treatment for his anxiety at some unspecified time after his diagnosis in November 2019. ECF No. 113-34 at 2. The declaration also states that Principal Castellano and Assistant Principal Wade were on notice of his disability after he filed his Amended Charge of Discrimination ("Amended Charge")

17

around January 2020. *Id.*[6]

In reply, the School Board argues that Mr. Rorie's declaration and unsupported deposition testimony that he told Principal Castellano about his disability are insufficient to meet his burden to refute his other testimony that he did not know if anyone knew he had a disability and the School Board's proffered evidence that Principal Castellano was unaware of his disability. ECF No. 122 at 6-7. In addition, the School Board contends that it admitted being on notice of Mr. Rorie's disability in the RFA response because its employee, Wanda Cummings, processed Mr. Rorie's requests for leave and had notice of his disability. *Id.* Finally, the School Board argues that Mr. Rorie has failed to submit record evidence that Principal Castellano or Assistant Principal Wade saw his Amended Charge or knew of its contents. *Id.*

Because the School Board's RFA response does not specify who at the School Board had knowledge of Mr. Rorie's disability, or when the School Board acquired this knowledge, it appears to be a general admission of notice. Viewing the evidence in the light most favorable to Mr. Rorie, the School Board's RFA response, together with Mr. Rorie's declaration, present a genuine dispute of material fact regarding whether Principal Castellano and Assistant Principal Wade had knowledge of his disability at the time of some of the alleged adverse employment actions. Based on the evidence presented by Mr. Rorie, the earliest Principal Castellano or Assistant Principal Wade learned of his disability was after his diagnosis in November 2019.

---

[6] Although the Amended Charge lacks a legible date, the School Board does not challenge Mr. Rorie's statement that the Amended Charge was filed in January 2020.

B. <u>Mr. Rorie cannot pursue his disability discrimination claims based on his alleged termination because his termination is not identified in the SAC as an adverse employment action.</u>

Mr. Rorie raised his termination as the basis for his disability discrimination claims for the first time in response to the Summary Judgment Motion. The SAC does not allege that Mr. Rorie's termination, which occurred after the SAC was filed, constitutes an adverse employment action. "'[C]laims must be presented in the [c]omplaint' and 'a plaintiff may not wait until the response to summary judgment to raise new claims.'" *See Bankston v. Sewon America, Inc.*, No. 15-CV-00207, 2018 WL 1779451, at *11 n.25 (N.D. Ga. Jan. 31, 2018) (first quoting *Ginwright v. Dep't of Revenue for Ala.*, No. 12-CV-473, 2014 WL 2535185, at *9 n.5 (M.D. Ala. June 5, 2014); then citing *Tyler v. Kia Motors Mfg. Ga. Inc.*, No. 14-CV-00147, 2016 WL 9663168, at *16 n.43 (N.D. Ga. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 9651774 (N.D. Ga. Sept. 1, 2016), *aff'd*, 702 Fed. Appx. 945 (11th Cir. 2017); and *Robert v. Archbold Med. Ctr.*, 220 F. Supp. 3d 1333, 1346 (M.D. Ga. 2016)), *report and recommendation adopted*, 2018 WL 1783167 (N.D. Ga. Mar. 9, 2018). Accordingly, the Court will not consider Mr. Rorie's termination as an adverse employment action.[7] *See id.* (declining to consider new adverse employment actions

---

[7] Although not mentioned in Mr. Rorie's response to the Summary Judgment Motion, the Court notes that Mr. Rorie's Amended Statement of Facts also claims that an alleged demotion in February 2021 constitutes an adverse employment action. ECF No. 113 at 12, ¶41. Because the demotion is not alleged in the SAC, the Court will not consider the demotion as an adverse employment action. *See Bankston*, 2018 WL 1779451, at *11 n.25.

alleged in plaintiff's response in opposition to motion for summary judgment because the actions were not pled in the complaint).

Because the Court declines to consider Mr. Rorie's termination on the basis that it is not presented in the complaint, rather than based on whether Mr. Rorie has exhausted his administrative remedies, the Court need not evaluate Mr. Rorie's undeveloped argument that the "Charge of Discrimination period" was tolled in this case. *See* ECF No. 110 at 7-8.

C.  The School Board's alleged increased scrutiny of Mr. Rorie does not constitute an adverse employment action.

Mr. Rorie argues that Assistant Principal Wade's increased scrutiny of his performance, at Principal Castellano's direction, constitutes an adverse employment action. ECF No. 110 at 2, 8-9. This argument fails for at least two reasons.

First, Mr. Rorie's own allegations suggest that the School Board increased scrutiny of his performance for a reason other than his disability. Mr. Rorie argues that the increased scrutiny occurred because he complained to the School Board in December 2018 and October 2019 about the conduct of a custodial trainer, Mr. Greco. ECF Nos. 110 at 2; 113-13. Mr. Rorie's complaint about Mr. Greco did not include any allegations related to Mr. Rorie's disability. Therefore, accepting Mr. Rorie's allegations as true, the School Board's increased scrutiny of Mr. Rorie was not because of his disability.

Second, the evidence presented by Mr. Rorie shows that the increased scrutiny of his performance predates both the onset of his disability, and the date

Principal Castellano and Assistant Principal Wade allegedly became aware of his disability. The undisputed record reflects that the increased scrutiny of Mr. Rorie's performance began in the Summer of 2019. *See* ECF Nos. 113-10 ¶4(a); 113-34 ¶8. Mr. Rorie was not diagnosed with anxiety until approximately three months later on November 1, 2019. ECF Nos. 110 at 2; 113-3. The earliest Principal Castellano and Assistant Principal Wade became aware of Mr. Rorie's disability was after he was diagnosed with anxiety and after the increased scrutiny began. ECF No. 113-34 at 2.

Even viewing the record in the light most favorable to Mr. Rorie, the record does not support an inference that the School Board's decision to increase scrutiny of Mr. Rorie was because of his disability because no decisionmaker had knowledge of his disability when the increased scrutiny began. *See Ferreira-Silva*, 2022 WL 2438156, at *5. Accordingly, increased scrutiny cannot serve as the adverse employment action that supports Mr. Rorie's disability discrimination claims.

D.  Mr. Rorie's write ups do not constitute adverse employment action.

Mr. Rorie claims that the write ups he received constitute adverse employment action. He does not identify the write ups that he claims constitute adverse employment action, much less explain how any of the write ups – either individually or collectively – had a material effect on his employment. The Court assumes for the purposes of the Summary Judgment Motion that the write ups at issue are the ten memorandums, directives for immediate action, Verbal Reprimand with Written Notation, and conference notes that were issued to Mr. Rorie between October 22, 2019, and February 3, 2021, and are attached to the Summary Judgment Motion

21

("Write Up Documents"). PSOF ¶¶ 22, 30-33, 35-36, 39-41, 43; ECF No. 102-3 at 19-25, 29-38, 41-48. The Write Up Documents scold Mr. Rorie for various performance deficiencies including demonstrating poor judgment, failure to follow certain attendance procedures, and failure to properly manage and supervise his subordinates.[8] *Id.*

Written reprimands are not considered adverse employment actions unless the reprimands resulted in a "significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities." *See Harris v. Universal Logistics*, No. 18-CV-01270, 2018 WL 6095197, at *5 (N.D. Ala. Nov. 21, 2018) (citing *Davis*, 245 F.3d at 1239) (holding that three written reprimands/corrective action forms did not constitute adverse employment actions in ADA retaliation case where the reprimands showed no adverse consequence and plaintiff did not receive further discipline, reduction in pay, inability to receive future pay raises, or other adverse action as a result of the reprimands and received a subsequent rate raise); *see also Medearis v. CVS Pharmacy, Inc.*, 646 Fed. Appx. 891, 898 (11th Cir. 2016) (holding that Title VII plaintiff's receipt of "several written reprimands" did not constitute an adverse employment action where the reprimands were not made part of plaintiff's personnel file and plaintiff offered no evidence that the reprimands resulted in a tangible

---

[8] As stated previously, Mr. Rorie refused to sign the Write Up Documents and challenges the veracity of the allegations in the documents. ECF Nos. 110 at 3; 102-3 at 19-25, 29-38, 41-48; PSOF ¶¶22, 30-33, 35-36, 39-41, 43. However, he does not dispute that the documents were issued to him.

consequence); *but see Burdette v. Fed. Express Corp.*, No. 97-CV-2935, 1999 WL 1788188, at *8 (N.D. Ga. Nov. 8, 1999) (finding written reprimand to be an adverse employment action in ADA retaliation case without analyzing whether reprimand had material impact on employment). In the context of a Title VII discrimination case, the Eleventh Circuit has explained:

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee. Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.

*Id.*; *see also Kristoff-Rampata on behalf of Lombardo v. Publix Super Markets, Inc.*, No. 15-CV-01324, 2016 WL 11431493, at *5 (M.D. Fla. Nov. 17, 2016) (applying *Davis'* rationale to ADA retaliation action and finding general criticism and increased supervision insufficient to establish an adverse employment action in the form of a constructive discharge).

As an initial matter, the October 22, 2019, Memorandum was issued before Mr. Rorie alleges anyone at the School Board knew about his disability. Therefore, this memorandum cannot serve as an adverse employment action. *See Ferreira-Silva*, 2022 WL 2438156, at *5.

The remaining Write Up Documents are likewise insufficient to constitute

23

adverse employment action because Mr. Rorie has failed to show that the documents resulted in any impact on his employment, much less a material impact that a reasonable person in his position would consider adverse. The SAC claims that the Write Up Documents resulted in Mr. Rorie experiencing anxiety "which resulted in recurrent mental breakdowns and extreme stress." ECF No. 28 at 8, ¶48. It further claims Mr. Rorie "has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage." *Id*. at 10, 19, ¶¶65, 95. Even assuming Mr. Rorie presented evidence of these allegations, these allegations, without more, do not suggest that a reasonable person in Mr. Rorie's position would consider the Write Up Documents adverse. Indeed, an employee is not guaranteed a stress-free working environment. *See Kristoff-Rampata*, 2016 WL 11431493, at *5 ("Plaintiff is not guaranteed a stress-free working environment.") (citation omitted).

Notably, all but two of the remaining Write Up Documents state that Mr. Rorie may be subjected to future discipline if he continued to engage in the conduct discussed in those documents and that the documents could be used to support a disciplinary case against him.[9] However, Mr. Rorie does not point to any evidence that shows that the documents resulted in further discipline. In addition, some of the

---

[9] The January 6, 2020, Memorandum and the August 27, 2020, Conference Notes do not mention the potential for future discipline based on the document. ECF No. 102-3 at 30, 41-42. However, the January 6, 2020, Memorandum states that Mr. Rorie would be subjected to discipline if he failed to attend a meeting about his performance deficiencies.

Write Up Documents are referenced in other documents in the record, such as subsequent Write Up Documents or Mr. Rorie's performance evaluations.[10] However, Mr. Rorie does not present any evidence or argument that these subsequent documents resulted in a negative impact on his employment such that the underlying Write Up Documents should be characterized as adverse. Accordingly, Mr. Rorie has failed to satisfy his burden to show by an objective standard that the Write Up Documents, either individually or collectively, constitute adverse employment action. *Davis*, 245 F.3d at 1242 (stating that a Title VII discrimination claim "rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment" and finding that two job performance memoranda did not constitute adverse employment action); *see also Hargett*, 219 F. Supp. 3d at 1239-40 (finding negative performance review, supplemented by evaluation addendum and

---

[10] The December 2, 2019, Memorandum, December 16, 2019, Directive, January 6, 2020, Directive, January 7, 2020, Memorandum, August 27, 2020, Conference Notes, and the October 6, 2020, Memorandum were subsequently referenced in either the January 9, 2020, Memorandum of Assistance, one of Mr. Rorie's three "unsatisfactory" performance evaluations between January 6, 2020, and June 17, 2021, or both. ECF No. 102-3 at 13-16, 33-37. The August 27, 2020, Conference Notes were also referenced in the October 6, 2020, Memorandum. *Id*. at 43.

Although Mr. Rorie states that he received unidentified "unfair performance evaluations," he does not allege that any of his performance evaluations were adverse employment actions. *See e.g.*, ECF No. 110 at 3, 8. Nor does he present any evidence or argument that these performance evaluations had any effect on his employment. Notably, "[n]egative performance evaluations, standing alone, do not constitute adverse employment action." *See Martin*, 702 Fed. Appx at 956 (quoting *Lucas*, 257 F.3d at 1261).

25

Performance Improvement Plan, did not qualify as a materially adverse action where plaintiff failed to show that the negative review had a tangible impact on the terms, conditions, and privileges of her employment).

E.  Mr. Rorie's alleged schedule changes do not constitute adverse employment action.

Mr. Rorie argues that his "schedule changes" constitute adverse employment action. ECF No. 110 at 11-12. The SAC alleges that Principal Castellano changed Mr. Rorie's shift hours three times within a six-month period. ECF No. 28 at 4, ¶30. Mr. Rorie does not point to any evidence that his schedule was changed. Nor does he explain why any alleged change to his schedule was substantial enough to constitute an adverse employment action.

The School Board submitted evidence that Mr. Rorie's schedule was changed one time. ECF No. 102 at 6 (citing ECF No. 102-3 at 40). According to a Notice to Meet issued to Mr. Rorie on January 14, 2020, Mr. Rorie's duty hours would change to 3:00 pm-11:30 pm, Monday-Friday, effective January 21, 2020. ECF No. 102-3 at 40. Neither party has pointed to evidence of Mr. Rorie's schedule before this change. Nor is there any evidence that suggests that this particular schedule change should be characterized as adverse. Indeed, Mr. Rorie does not argue that the schedule change resulted in a loss of benefits, decreased salary, or otherwise changed the terms, conditions, and privileges of his employment in such a manner that a reasonable person in his position would view the schedule change as adverse. *See Doe*, 145 F.3d at 1448-4; *see also Burdette*, 1999 WL 1788188, at *8 (finding that ADA

retaliation plaintiff did not satisfy his burden to show a shift change from morning to evening constituted an adverse employment action where no evidence existed by which to characterize the shift change as adverse); *Marshall v. Aryan Unlimited Staffing Sol./Fanueil Inc./MC Andrew & Forbs Holding*, No. 12-81404, 2013  WL 836990, at *3 (S.D. Fla. Mar. 6, 2013) (J. Hurley) (finding that an alleged transfer of a plaintiff to a night shift, standing alone, does not "describe an 'adverse action' which is actionable under Title VII") (citations omitted). Accordingly, Mr. Rorie has failed to satisfy his burden to show by an objective standard that any changes to his schedule constitute adverse employment action.

F.   Mr. Rorie's alleged change in duties and responsibilities does not constitute adverse employment action.

Mr. Rorie argues that changes to his duties and responsibilities constitute adverse employment action. ECF No. 110 at 9-12. Although not clearly articulated to be changes in duties and responsibilities, the SAC alleges that Principal Castellano required Mr. Rorie to change the cleaning assignments for his subordinates and requested he make cleaning schedules. ECF No. 28 at 7-8, ¶¶41, 46. In support of his claim that his duties and responsibilities were "constant[ly] changing and shifting," Mr. Rorie cites screenshots of two emails.[11] The first screenshot, dated December 18, 2019, says:

---

[11] Neither party provided the full emails for the Court's consideration.

27

On Wed, Dec 18, 2019 at 7:06 AM David Rorie <david.rorie@palmbeachschools.org> wrote:
The person who usually cleans the daycare is Llulys Vidal. She has been out of work for almost two weeks. She is coming back on Thursday. I had the Custodians group clean. We are still missing three Custodians with no help or replacement. I generally help the Custodians, but since Ms. Castellano's second letter, I am unable. She requires me to check on each Custodian and how they clean every half an hour. I do this until my shift is over at 8:30 pm.  If time permits me to, I will assist with changing light bulbs and with group cleaning so they can get back to their areas. I would like to stay late to help the Custodians get their job duties completed, but since Ms. Castellano had a problem with my time I am unable to.

ECF No. 110 at 9. The second screenshot, dated September 29, 2020, says:

---------- Forwarded message ----------
From: **Joshua Wade** <joshua.wade@palmbeachschools.org>
Date: Tue, Sep 29, 2020 at 6:30 AM
Subject: Re: Concerns
To: Dannie Bolden II <dannie.boldenii@palmbeachschools.org>
Cc: David Rorie <david.rorie@palmbeachschools.org>, Jose Pillot <jose.pillot@palmbeachschools.org>

David,

Per the Custodial Foreperson IV job description (posted below) all duties assigned to you are commensurate with your position.  According to district custodial/maintenance leadership (i.e. Dan Bolden and Jose Pillot), head custodians around the district clean areas as assigned each shift.  As we discussed in the 8/27/2020 meeting, Covid paperwork and follow-through is a non-negotiable.  We also discussed (multiple times) the new custodial area map and how the smaller cleaning areas allow more time to ensure proper cleaning and sanitizing.  Using the district measure of 12-15 minutes per room to properly clean, your area can be cleaned in approximately 2.5 hours. This leaves you with approximately 5.5 hours each shift to complete the other requirements of your position.

As to your assertion that you are "being set up to fail" and that there is a plan to "get you fired", this accusation is baseless and false.  I am concerned that you are asking me to meet with you again to discuss items we have already discussed and I've walked you through step by step.  We discussed this on 8/13, 8/27 and 9/15 in great detail. While I will certainly do it again, below I would like to remind you of the multitude of support I have provided you over the past year.

ECF No. 110 at 10. Mr. Rorie does not point to any evidence regarding his duties and responsibilities before these alleged changes. He likewise fails to provide evidence or otherwise explain why any alleged changes to his duties and responsibilities had a material effect on his employment or were otherwise sufficiently significant that a reasonable person in his position would view the changes as adverse. Without evidence regarding Mr. Rorie's original responsibilities, or argument from Mr. Rorie regarding how his duties have changed and why the alleged changes resulted in some material effect on his employment, it is impossible for the Court to determine whether

28

the alleged changes constitute adverse action. *See Long v. Potter*, No. 04-CV-2888, 2006 WL, 8432674, at *10 (N.D. Ga. Dec. 1, 2006) (finding that Title VII plaintiff failed to point to "sufficient evidence in the record that the reassignment of duties was so undesirable that it constituted a material and significant change in duties or responsibilities"), *report and recommendation adopted*, 2007 WL 9701254 (N.D. Ga. Jan. 26, 2007); *see also Diaz v. AIG Marketing, Inc.*, 396 Fed. Appx. 664, 667 (11th Cir. 2010) (citing *Davis*, 245 F.3d at 1244) ("[C]hanges to an employee's work assignments are rarely sufficiently 'adverse' to warrant scrutiny under the anti-discrimination laws."). Accordingly, Mr. Rorie has failed to satisfy his burden to show by an objective standard that the School Board's changes to his duties and responsibilities constitutes adverse employment action.

G. <u>The alleged adverse employment actions do not collectively constitute adverse employment action</u>.

To the extent Mr. Rorie argues that the above alleged adverse employment actions collectively constitute an adverse employment action, that argument fails for the same reason the majority of his individual allegations fail: there is no evidence that the actions had a material impact on his employment such that a reasonable person in his position would view the actions collectively as adverse. Because Mr. Rorie has failed to demonstrate that he suffered an adverse employment action, he fails to establish a necessary element for his disability discrimination claims and the School Board is entitled to summary judgment. *See Sloan*, 2019 WL 2869067, at* 3 (citing *Martin*, 702 Fed. Appx. at 956-59) (granting summary judgment on ADA

discrimination claim where plaintiff failed to demonstrate that she suffered an adverse employment action). The Court need not evaluate the parties' remaining arguments because Mr. Rorie's failure to demonstrate that he suffered an adverse employment action is dispositive.

## **MOTION FOR RECONSIDERATION**

On December 7, 2023, Mr. Rorie filed a Motion for Reconsideration of the MTD Order. ECF No. 131. In relevant part, the MTD Order dismissed Mr. Rorie's FCRA and Title VII race discrimination claims ("Race Discrimination Claims") and FCRA, Title VII, and ADA retaliation claims ("Retaliation Claims") with prejudice for failure to allege a sufficient adverse employment action.[12] ECF No. 40.

Mr. Rorie argues the Court should reconsider the dismissal of his Race Discrimination and Retaliation claims with prejudice because his termination – which constitutes a sufficient adverse employment action – qualifies as newly acquired evidence and to prevent manifest injustice. ECF No. 131 at 5-7. He says that he did not receive formal notice of his termination until after the MTD Order was issued, despite the School Board terminating his employment before that date. *Id.* at 2-3. After receiving notice of his termination, he filed an additional charge of discrimination with the EEOC. *Id.* at 3. On December 7, 2023, he exhausted his administrative remedies and received a Notice of Right to Sue based on his

---

[12] Mr. Rorie does not request reconsideration of the Court's dismissal of his religious discrimination and hostile work environment claims. ECF No. 131 at 4.

termination. *Id.* at 3-4. He says his request is timely because he filed the motion for reconsideration the same day he received his Notice of Right to Sue.[13] *Id.* at 3-4, 7.

The School Board argues that Mr. Rorie fails to satisfy the standard for reconsideration. ECF No. 135 at 1, 3-4.  It further argues that permitting Mr. Rorie to amend the complaint to revive his previously dismissed claims would be "highly prejudicial" to the School Board, would only delay resolution of the case, and would require additional discovery. *Id.* at 1, 4-5. Specifically, the School Board argues that allowing Mr. Rorie to amend his claims "at the eleventh hour," less than one month before trial and after discovery has closed, would unduly prejudice its "ability to present its defense." *Id.* at 4.

The Court construes the Motion for Reconsideration as a motion for leave to amend the SAC to assert race discrimination and retaliation claims based on the December 7, 2023, right-to-sue letter. If the motion is denied, Mr. Rorie will have to file a new lawsuit to present these claims. Requiring him to file a new lawsuit, pay an additional filing fee, and serve the School Board would not advance the just, speedy, and inexpensive resolution of the disputes between Mr. Rorie and the School Board. *See* Fed. R. Civ. P. 1. Because the Summary Judgment Motion is being granted, the SAC will be dismissed with prejudice and the current trial date will be cancelled. The School Board's ability to defend against, and achieve finality for, the

---

[13] Mr. Rorie also highlights that he promptly moved to stay the case pending exhaustion of administrative remedies after he discovered his termination. As stated previously, that motion was denied.

existing claims will therefore not be unduly prejudiced by allowing Mr. Rorie to assert new claims. For the above stated reasons, Mr. Rorie may amend the complaint to assert race discrimination and retaliation claims based on his termination. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## <u>CONCLUSION</u>

WHEREFORE, it is ORDERED and ADJUDGED as follows:

1.  Defendant's Motion for Summary Judgment (ECF No. 102) is **GRANTED**. Mr. Rorie's disability discrimination claims (Counts I and VI) based on the School Board's increased scrutiny of his performance, modification of his duties, responsibilities, or schedule, and the Write-Up Documents are **DISMISSED WITH PREJUDICE**.

2.  Plaintiff's Motion for Reconsideration, construed to be a motion for leave to amend the SAC to assert race discrimination and retaliation claims based on Mr. Rorie's termination, (ECF No. 131) is **GRANTED**. Mr. Rorie shall file a third amended complaint, limited to claims based on his termination, on or before January 31, 2024.

3.  The trial date and any remaining case deadlines or hearings are hereby **CANCELLED** pending further order of the Court.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 4th day of January 2024.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE